UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

UNITED STATES OF AMERICA            *

VS.                                 *          CASE NO. GLR14-218

LEONARD MCLEAN                      *

## SUPPLEMENTAL MEMORANDUM IN SUPPORT
## OF DEFENDANT'S MOTION TO SUPPRESS

The Defendant, by and through his attorney, Robert C. Bonsib, Esq., respectfully requests this Honorable Court to suppress evidence seized in the above captioned matter and as reasons therefore states as follows:

### I.  INTRODUCTION AND BACKGROUND

The Defendant in the above captioned matter has been indicted in a one-count indictment that alleges that on March 18, 2014 that he intentionally and unlawfully possessed with intent to distribute 500 grams or more of a mixture of substance containing a detectible amount of cocaine.

The controlled substances that the Defendant is alleged to have possessed in the above captioned matter were seized as a result of a search of an automobile that the Defendant was operating on March 18, 2014.

Prior to the stop of the Defendant's vehicle, the Defendant had been the subject of electronic surveillance, with evidence obtained as a result of the issuance of court orders that the government contends authorized the use of cell phone tracking devices. The Defendant challenges the sufficiency and legality of the warrants authorizing the electronic surveillance.

On March 18, 2014 the Defendant was stopped on Interstate 95 after the government alleges he was returning from New York City. The Defendant was stopped by a Maryland State

1

Trooper at the direction of narcotics officers. Although the government contends that the trooper had a lawful basis to stop the Defendant, the Defendant controverts that allegation and respectfully asserts that the stop was not justified. Furthermore, at the time of the stop, the Defendant was detained for an unlawful period of time and any subsequent search was not only the product of an unlawful stop but also the product of an unlawful detention.

For the reasons more fully set forth in this Memorandum, it is respectfully submitted that this Honorable Court should suppress the evidence seized from the search of the Defendant's vehicle.

## II.      CHRONOLOGY

The investigation in this matter began with law enforcement officers using a confidential information (C.I.) to purchase controlled substances from Gregory McNeil. Controlled purchases were made from McNeil in the months of July, August, September, October and November 2013.

During the course of the investigation the C.I. indicated that the source of controlled substances for Gregory McNeil was an individual identified by name as "Fatman.' No basis for the C.I.'s allegation that "Fatman" was the source of supply for McNeil was disclosed in the affidavit's supporting the court orders nor in the discovery provided to the Defendant. The C.I. purportedly identified a MVA photograph of the Defendant as one that "looks like" "Fatman."

Investigators issued a grand jury subpoena for telephone number (718) 909-6601 and, thereafter, received subscriber information indicating that this number was listed to Leonard McLean at 175 Sterling St., Brooklyn, NY.

A criminal records check was done on McLean and revealed that he had a prior criminal history involving arrests and convictions for controlled substances violations.

During the investigation, investigators obtained records indicating that McLean lived at 421 Valley Meadow Creek, Reisterstown, Maryland.

Motor Vehicle Administration records confirmed that a Chevrolet Avalanche SUV, Maryland tag 8A54056, was listed to Leonard McLean at 4807 Crown Avenue, Baltimore, Maryland.

In December, investigators were at the area 421 Valley Meadow Circle and observed the SUV with Maryland tag 8A54056. A K-9 was brought to the area of the vehicle and investigative reports contend that there was a positive alert by the K-9 indicating that the vehicle was, according the police report, "contaminated with CDS."

In December, call detail records were information obtained for telephone number (718) 909-6601. Investigators allege that certain telephone numbers noted in the call detail records indicated several contacts with "known CDS violators." No specifics or details were provided to support the allegations that the contacts were with "known CDS violators."

On December 26, 2013, Detective Sodd applied to the Baltimore County Circuit Court for an order authorizing a dial number recorder (DNR) with respect to telephone number (718) 909-6601. The Order was granted on that date for a period not to exceed 60 days. (See attached Exhibit No. 1) The extension request significantly described the extension request as one that was extending the earlier December 26, 2013 Order that "…authorized a DNR installation on the cellular telephone [718] 909-6601" and did not describe it as cell-tracking order.

On February 11, 2014 an extension request was submitted and an Order issued extending the December 26, 2013 Order for an additional 60 days.  (See attached Exhibit No. 2)

The only information contained within the extension request that was not previously contained with the original application was a paragraph stating the following:

"During the month of December, 2013, Detective Sodd #4072 responded to the Circuit Court of Baltimore County and presented an Ex Parte Order authorizing the installation of a Dial Number Recorder (DNR) to the Honorable Judge Finifter.  The Order authorized a DNR installation on the cellular telephone [718] 909-6601.  The Honorable Judge Finifter reviewed and signed the court order.  Subsequent analysis of the DNR data collected from Leonard MCLEAN'S cell phone revealed several contacts with individuals known to have been involved and/or currently participants in target MCLEAN'S drug distribution scheme responsible for the  importation  and  sale  of Cocaine in the Baltimore Metropolitan area."

On March 8, 2014 in the area of 421 Valley Meadow Circle, officers were present with a K-9.  No scan was done of a black Denali observed parked in front of 421 Valley Meadow Circle as they observed a black male that investigators alleged matched the description of the Defendant in the area.  No actual identification of the Defendant was noted in the investigative reports regarding the events of that day.

On March 17, 2014, a GPS tracking device indicated that there was a black Denali still located at the 421 Valley Meadow Circle address.  The tracking of the target cell, however, had the target cell phone located at various locations throughout Baltimore City.

4

At approximately 13:45 hours on March 18, 2014, investigators allege that cell-tracking information received pursuant to the February 11, 2014 Order indicated that the target telephone was in the vicinity of JFK airport in New York.  The Denali was, however, still parked at the 421 Valley Meadow Circle address.

Later that day, Detective Sodd contacted a trooper associated with the drug task force who contacted the Maryland State Police "in an effort to locate, discern a valid traffic infraction and stop target McLean on southbound Interstate 95."

At approximately 19:44 hours, Maryland State Trooper Sander observed a Chevrolet Avalanche, Maryland tag 8AW4238 crossing the Tidings Bridge on Route I-95, traveling southbound.  Trooper Sander alleges that as he was travelling next to the vehicle "he observed that the front windows were tinted illegally" and at that time he conducted a traffic stop.

Once the vehicle was pulled over the trooper indicated that he observed the vehicle to have a disheveled, "lived in" look in the interior and noted several air fresheners in the vehicle.

A K-9 had been requested and Corporal Cooper, together with K-9 Zigo, arrived at the scene of the traffic stop.  According to the police reports provided to the defense, Zigo scanned the vehicle and provided a positive alert with respect to the presence of controlled substances.

A search of the vehicle operated by the Defendant was subsequently conducted and quantities of controlled substances recovered.

### III.    LEGAL ARGUMENT

The Defendant respectfully submits the following:

1.    The December 26, 2014 Court Order was based upon a "bare bones" affidavit lacking in probable cause.

2.      The February 11, 2014 Extension Order was based upon a "bare bones" affidavit lacking in probable cause

3.      The Orders did not properly authorize the tracking of a cell phone, each was overbroad and each failed to properly particularize and limit the purported authorization to track the target cell phone.

4.      The March 18, 2014 stop of the Chevrolet Avalanche was unlawful and not supported by either reasonable suspicion or probable cause.

5.      The post-traffic stop detention of the Defendant was unlawful and any evidence subsequently seized as a product of the period of unlawful detention must be suppressed.

### Each Baltimore County Order was a "Bare Bones" Affidavit Totally Lacking in Probable Cause

The affidavits that the government seeks to rely upon to justify the collection of DNR and cell-tracking information can only be characterized as "bare-bones" affidavits. Such affidavits not only are lacking in probable cause and cannot be "rescued" by reliance upon the "good faith" exception.

An affidavit that is "bare-bones" is an affidavit that might be considered to be "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" such that the *Leon* good faith exception would not apply. *U.S. v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421 (1984); a "bare-bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Laury,* 985 F.2d 1293, 1311 n. 23 (5th Cir. 1993).

6

*Leon* teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a "subsequently invalidated" warrant, unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922, 104 S.Ct. 3405.  The Supreme Court explained that an officer could not be found to have acted with "objective reasonableness," excluding application of this "good faith exception," in any of the following circumstances:

(1) "the magistrate ... was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";

(2) the magistrate acted as a rubber stamp for the officers and so "wholly abandoned" his detached and neutral "judicial role";

(3) "an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or

(4) "a warrant [is] so facially deficient—*i.e.,* in failing to particularize the place to be be valid."

*Id.* at 923, 104 S.Ct. 3405.

The Supreme Court has "expressed a strong preference for warrants" and has repeatedly noted that " 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.' " *Leon,* 468 U.S. at 914, 104 S.Ct. 3405 (quoting *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)). The Supreme Court has also been clear that "[d]eference to the magistrate, however, is not boundless." *Leon,* 468 U.S. at 914, 104 S.Ct. 3405.   *See also United States v. DeQuasie,* 373 F.3d 509, 519-20 (4th Cir. 2004).

The December 26, 2013 Court Order authorizing the DNR was "bare-bones" and based essentially upon uncorroborated information from an informant whose reliability and basis of knowledge, if any, was not disclosed to the issuing judge.

Even assuming, *arguendo*, that the December 26, 2013 Order was supported by an affidavit that minimally passes the threshold for sufficiency, the February 11, 2014 Order was totally deficient in providing any basis for the Baltimore County judge to grant the Extension Order.   The Extension Order was based, in essence, on the Detective's conclusory belief and proffer that the target cellphone was being used to have contact with unidentified individuals who, either presently or at some undefined time in the past, were "known" to be involved in the distribution of controlled substances.   The total lack on any information to support that assertion cannot and does not support the issuance of the Extension Order.   The information that led to the stop of the Defendant's vehicle on March 18, 2014 is a direct fruit of information obtained from this deficient Order and, therefore, must be suppressed.

### The Stop Of The Chevrolet Avalanche Was Unlawful

What is clear is that the stop of the Chevrolet Alvanche SUV was done to further the narcotics investigative information and to search the vehicle and for no other reason.

While *Whren v. United States,* 116 S. Ct. 1769 (1996) authorizes the stop of a vehicle for a legitimate traffic violation, even if that is done for pre-textual reasons, and with the result that any evidence seized as a product of the pre-textual stop may be admissible, in this matter there was no legitimate reasons for a traffic stop and, in fact, the stop was not to enforce any violation of the motor vehicle laws.

To argue that the stop was based upon a traffic infraction in this matter stretches credulity.  It was purely and simply to investigate possible narcotics trafficking activity.   Not

even the proffered reasons of an alleged window tinting violation can withstand judicial scrutiny.

There was no lawful basis to stop the vehicle.  The subsequent search was a product of that unlawful search and any evidence seized as a consequence must be suppressed.

In addition to the stop being unlawful, once the stop occurred, the length of the stop was continued for investigative purposes and without lawful justification.  This period of continued unlawful detention tainted any evidence subsequently seized during the period of the unlawful detention.   Any period of unlawful detention is, it is respectfully submitted, tainted any seizures made subsequent to the time that the period of the unlawful detention began.

The Supreme Court recently granted certiorari to address the issue of whether even a *de minimis* period of unlawful detention is sufficient to taint the subsequent seizure of evidence. *United States v. Rodriguez,* 2014 WL 1766135 (case below; 741 F.3d. 905 (8th Cir. 2013).   The Petitioner in that matter, noting a split in the state and federal courts on this issue, has argued that any period of unlawful detention is sufficient to taint any subsequent seizures.    The Defendant agrees and adopts and incorporates the arguments made by the Petitioner in the *Rodriguez* case.   Rather than restating in this Memorandum the arguments in *Rodriguez*, the Defendant adopts the arguments advanced by Rodriguez before the Eighth Circuit and in his certiorari petition before the Supreme Court.   Attached as Exhibit 3 to this Memorandum are the briefs filed in *Rodriguez* before the Eighth Circuit Court of Appeals, the Supreme Court certiorari petition and government opposition thereto, and the opinion of the Eighth Circuit in *Rodriguez*.

The Defendant strongly asserts that the initial stop of his vehicle was unlawful, once the stop occurred, the continued detention of his vehicle was strictly for investigative purposes not

related to the pre-textual reason asserted by the trooper for stopping the vehicle and that continued investigative detention was unlawful. The length of the unlawful detention, and any period of continued unlawful detention was, as the Petitioner has argued in *Rodriguez,* unlawful. Any evidence seized from the subsequent search of the Defendant's vehicle must be suppressed.

### The Orders Relied Upon To Track McLean's Cell Phone Are Overbroad And Otherwise Constitutionally and Procedurally Deficient

The Applications and Orders relied upon in this matter purport to authorize "the installation and use of a Pen Register/Dial Number Recorder and Caller Identification/Caller Identification Deluxe Features" for cellular telephone number (718) 909-6601. The Applications and Orders cite Md. Code Ann., Cts. & Jud. Proc. § 10-4B-04 authority for the issuance of the Orders.

The Orders further purports to authorize the collection of such information "regardless of the geographical location of the originating telephone."

Md. Code Ann., Cts. & Jud. Proc. § 10-4B-01 provides definitions for both a "pen register" and for "trap and trace devices"

(c)(1) "Pen register" means a device or process that records and decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted.

(2) "Pen register" does not include any device or process used:

(i) By a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by the provider or any device used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business; or

(ii) To obtain the content of a communication.

**Trap and trace device**

(d)(1) "Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication.

(2) "Trap and trace device" does not include a device or process used to obtain the content of a communication.

A description of the Caller Identification/Caller Identification Deluxe Features provided by AT&T for which the Order is requested are described in the Application for the Order as a feature that "provides the originating telephone number of calls placed to the aforementioned telephone."   This is simply another way of describing a pen register.  Attached as Exhibit 4 is a printout from the AT&T website also describing the Caller Identification/Caller Identification Deluxe Features it offers.

Investigators requested a pen register order, not a tracking order, a fact confirmed, as previously noted, when it described in its extension application, as the extension being an request for an extension of the December, 2013 "authorizing the installation of a Dial Number Recorder (DNR)."

In his application for an Order, Det. Sodd describes exactly what he is requesting from the Circuit Court.  He states as follows:

"I, Detective Sodd #4072 being a duly sworn Police Officer for the Baltimore County Police Department, hereby applies to the Court for an Order authorizing the installation and use of a PEN REGISTER/DIALED NUMBER RECORDER and CALLER

IDENTIFICATION/CALLER IDENTIFICATION DELUXE FEATURES to be installed on

Cellular Telephone Number: [718]909-6601

Leased to:                          Leonard B. McLean

Billing Address:                    175 Sterling St.

                                    Brooklyn, NY 11225

A PEN REGISTER/DIALED NUMBER RECORDER will provide a record of all telephone numbers dialed or pulsed from the aforementioned telephone, record the date and time of such pulsing and then length of time the receiver in question is off the hook for the incoming and outgoing calls.  A CALLER IDENTIFICATION SYSTEM, in this case the CALLER IDENTIFICATION/CALLER IDENTIFICATION DELUXE FEATURES system provided by AT&T provides the originating telephone number of the calls placed to the aforementioned telephone."

If it is not otherwise abundantly clear that the Baltimore County Order does not authorize a tracking device, one need only refer to 18 U.S.C. 3117 as a reference for the specific language and authority necessary for the issuance of an order for a tracking device.

**(a) In general.**--If a court is empowered to issue a warrant or other order for the installation of a mobile tracking device, such order may authorize the use of that device within the jurisdiction of the court, and outside that jurisdiction if the device is installed

**(b) Definition.**--As used in this section, the term "tracking device" means an electronic or mechanical device which permits the tracking of the movement of a person or object.

18 U.S.C. 3117.

The Baltimore County Order makes a finding that the issuance of its Order will likely provide evidence through the "installation and use of a Pen Register/Dial Number Recorder and Caller Identification/Caller Identification Deluxe feature" and concludes by stating that "[i]t is hereby ordered upon a finding of probable cause that a Pen Register/Dialed Number Recorder and Caller Identification/Caller Identification Deluxe features be installed on… [cellular telephone number 718-909-6601."

No authorization was sought, no probable cause finding was made and no authorization was granted for the installation of a mobile tracking device on cellular telephone number 718-909-6601.

As stated by United States Magistrate Judge Susan K. Gauvey in *In re Application of U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526,  571-2 (D. Md. 2011):

"Following adoption of the ECPA, courts have recognized that, there are four broad categories of  electronic surveillance, each with its own well-established standard for obtaining court ordered disclosure or monitoring. Those categories (arranged from highest to lowest order of legal process) are: **(1) wiretaps,** which are authorized pursuant to 18 U.S.C. §§ 2510–2522, upon what could be called a  "probable       cause plus" showing; **(2) tracking devices,** which are authorized pursuant to 18 U.S.C. § 3117,  upon a standard probable cause showing; **(3) stored communications and subscriber records,** which   are authorized pursuant to the Stored Communications Act upon a showing of specific and articulable facts showing that there are reasonable grounds to believe that the data sought is relevant and material to an ongoing criminal investigation; and **(4) pen registers and trap and trace devices,**

which are authorized pursuant to 18 U.S.C. §§ 3121–3127 ... upon the Government's certification that the data sought is relevant to an ongoing criminal investigation." (emphasis in original)

Here the Baltimore County Order further provides that "[t]he Cellular Site identification information be unlimited geographically from Call Detail Records (CDR) for specific and articulable facts according to Federal Statute USC 2703(d) for the target number [718]909-6601." 18 U.S.C. 2703(d) of the "Stored Communications Act" provides a mechanism for the acquisition of historical cell site records. *In Re Application of United States of America for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013); *United States v. Guerrero*, --F.3d --- (2014), 2014 WL 4476565. What is very clear, as Judge Gauvey explains, is that 18 U.S.C. 2703 specifically excludes from its provisions a tracking device. 849 F.Supp. 2d at 574-5.

It is clear that the Fourth Amendment prohibits using electronic means to locate a defendant's cell phone absent an appropriate showing of probable cause. *Id. at* 583-4; *Riley v. California*, 134 S.Ct. 2473 (2014).

The Baltimore County Order does not authorize cell-tracking information to be gathered and transmitted in real time to investigators. It does not describe any cell-tracking technology that it purports to authorize, makes no probable cause findings to support the use of any such technology and provides no parameters or limitations on the manner in which the Order was to be executed to gather such real time information. It is a confusing and overbroad document that, at best, authorizes the use of a pen register and, perhaps, the gathering of stored communications, i.e. historical cell site information. It did not authorize the tracking of the target telephone on a real time basis.

14

When investigators intercepted and obtained real time information regarding the location of the target telephone and relied upon that information to target and stop the vehicle operated by the Defendant, they did so without a properly issued cell-tracking warrant and, therefore, the stop and detention of the Defendant and the subsequent search of the vehicle he was operating were each and all unlawful and conducted in violation of the Fourth Amendment to the United States Constitution and any evidence seized from the vehicle must be suppressed.

## IV.    SUMMARY AND CONCLUSION

For each and all of the foregoing conclusions it is respectfully submitted that the stop of the Defendant's vehicle and the subsequent detention of the Defendant and his vehicle were unlawful and that any evidence seized as a result thereof must be suppressed.

Respectfully submitted,

/S/

_____
ROBERT C. BONSIB, ESQ.
64ll Ivy Lane, Suite ll6
Greenbelt, Maryland  20770
(30l) 44l-3000
robertbonsib@marcusbonsib.com
Trial Bar No.  00324

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent via ECF this 13[h] day of October, 2014 to Assistant United States Attorneys Anthony J. Enright and Christopher Romano, Office of the United States' Attorney, 36 N. Charles St., Baltimore, MD 21201.


/S/

_____

ROBERT C. BONSIB